**CRONUS LAW, PLLC**

Larry Cohen, AZ Bar No. 010192
Jeff Bouma, AZ Bar No. 011808
Joel Fugate, AZ Bar No. 031739
2601 E Thomas Rd., Ste. 235
Phoenix, AZ 85016
Phone: (480) 467-3188
Fax:    (480) 718-8575
lcohen@cronuslaw.com
jeff@cronuslaw.com
joel@cronuslaw.com
admin@cronuslaw.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Renee Steinaker and David Steinaker a married couple;<br><br>Plaintiffs,<br><br>vs.<br><br>Southwest Airlines, Co., a Texas Corporation; Terry Graham and Jane Doe Graham; Ryan Russell and Jane Doe Russell; Defendants XYZ; Corporations I-X; Black and White Partnerships I-X; and Does I-X Under Fictitious Names;<br><br>Defendants. | Case No.: 2:19-cv-05022-SPL<br><br>**PLAINTIFFS' MOTION TO RECONSIDER RULING RE: PLAINTIFFS' FEDERAL RULE OF CIVIL PROCEDURE 15 (d) MOTION TO SUPPLEMENT ITS RESPONSE TO SOUTHWEST AIRLINES' MOTION TO DISMISS AND THE PILOTS' JOINDER**<br><br>**(Oral Argument Requsted)**<br><br>(*Assigned to the Honorable Steven P. Logan*) |

Plaintiffs hereby move, pursuant to Local Federal Rule of Civil Procedure 7.2, the Court to reconsider its order (Case Document #48) denying Plaintiffs Rule 15(d)/LRCiv.P 15.1(a) motion to supplement their response to Court Document #36 - Plaintiffs' Response to the Motion to Dismiss (Case Document # 29) filed by Southwest Airlines ("SWA") and

the Joinder (Case Document #30) filed by the Pilots, Graham and Russell. This motion is supported by the attached memorandum of points and authorities and the entire record of this case, which is incorporated herein by reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Motion For Reconsideration of Interlocutory Orders are left to the Sound Discretion of the Court**

A.  Legal Standard

Motions for reconsideration of interlocutory orders are not governed by the standards of F.R.Civ.P 60, but are directed to the sound discretion of the court *United Mine Workers of America 1974 Pension Trust v. Pittston Co.*, 793 F. Supp. 339 (D. D.C. 1992)  They provide the Court an opportunity to correct manifest errors of law or fact and to review newly discovered evidence. *Zander v. Craig Hosp.*, 267 F.R.D. 653 (D. Colo., 2010) Reconsideration is warranted where, as here, the Court has misapprehended a party's position. In this case, the misapprehension is likely the fault of undersigned counsel.

The Court ruled without the benefit of Plaintiffs' reply to the motion to supplement. The failure to file a reply was due to an error, or series of errors by undersigned counsel, Undersigned Counsel not only failed to timely file a reply to their motion to supplement, he failed to seek and secure an extension to file their reply.  As such, the Motion to Supplement could have been properly viewed by the Court as having been abandoned. That was not counsel's nor his clients' intent.

B.  Factual Basis for Motion

CRONUS LAW, PLLC

Undersigned counsel had a good faith belief that an extension to respond had been secured by his former paralegal prior to her departure from the firm. The paralegal was very experienced in litigation having worked at a well-known and respected firm for over 20 years before joining Cronus Law. She had worked for attorneys who were partners of that firm and who were known and respected by undersigned counsel and the attorneys at Cronus. The paralegal's departure occurred in the middle of March, just after the response was filed and after she had to self-quarantine because she had been exposed to C-19 by family members.  Her replacement was not available to start until April 1, 2020. Further, undersigned counsel's wife has a long-standing (20 year +) severe auto-immune disease. As such, undersigned counsel began working from home in mid-March to avoid any potential exposure from the many nurses and techs who work for the 3 healthcare, home nursing and hospital companies who share the building where Cronus Law has its offices. Simply put, undersigned counsel and his wife's doctors had and have a good faith belief that a C-19 infection would likely result in a fatality.

On March 11, 2020, Governor Ducey declared a public health emergency in response to the C-19 threat. (see Ex. "A" Executive order 2020-07) From March 19 to April 2, Governor Ducey issues 14 additional executive orders shutting down all but essential services, closing or severely restricting many businesses.[1] Undersigned counsel was aware in advance of the broad scope of the proposed executive orders, but did not know the details as to exactly what businesses would be shuttered. This was crucial

---

[1] The Courts in Arizona also took various steps to limit the potential for an outbreak of C-19.

information because, Counsel had to move on or before March 31, 2020 to Prescott. Az.[2] The various executive orders and the independent decisions of local businesses were a potential impediment to accomplishing the move, so the decision was made to accelerate the packing and moving schedule, while limiting the number of people who could enter the AirBnB where Counsel and his family had been using a temp housing since January 6, 2020. The move was successfully accomplished by April 1, but it was not until approximately April 6, that internet was installed in Counsel's new home office.

It was in this environment that Counsel instructed his former paralegal to obtain a one-month extension to file Plaintiffs' Reply, which she agreed she would do. But, as Counsel and his paralegal have not actually seen each other in person since early March, there were things which did not get done and were not caught because of the disruption to the normal face to face working routine. Undersigned counsel had a reasonable and good faith belief that, even in this hectic environment, his instructions had been followed and the extension obtained. As the Court record in this case demonstrates, all the attorneys have worked well together and have been generous in extending professional courtesies, such as extensions, to each other. Counsel had no reason to doubt that the same pattern

---

[2] Counsel's home of 25 years was destroyed by water damage over the Christmas holiday and had to be gutted. The temporary housing secured had to be vacated no later than by midnight, March 31, 2020. Counsel was able to secure a new residence available for occupancy on April 1, 2020. Given the circumstances, Counsel was able to secure an early move-in date and a moving crew. The moving crew and Counsel's wife needed to be quarantined from each other and the furniture, boxes and other possessions they transported needed to be kept separate from those already in their possession, until they could be cleaned and opened safely. This was an extensive and time-consuming process and, ultimately, only partially successful. Counsel and his wife are currently self-quarantined because his wife is ill and is currently receiving home care treatments.

had been followed, especially under these circumstances, and the extension granted. Unfortunately, it was not, and the error was not discovered until the Court had issued its ruling.

Undersigned counsel understands that a lawyer bears all responsibility for the management of his firm, staff, cases and personal life and accepts that responsibility. He is not blaming his former or current staff for his errors in failing to confirm not just that the extension had been requested, but granted by opposing counsel and the Court. That this reply went unfinished and unfiled for this length of time is highly unusual and, under normal circumstances, would not constitute a basis for granting a motion to reconsider the denial of the order or allowing leave to file the reply attached hereto. However, these are not normal times. Failure to pay strict attention to safety measures, such as self-isolation and social distancing can result in severe and even fatal consequences to others. Therefore, the "normal" disruptions" that would flow from the unexpected loss of a home, moving households twice in a 10-week period and transitioning to a remote work force and a new paralegal, were significantly complicated by the need to comply with safety precautions mandated by the COVID-19 pandemic risks. To the extent that undersigned counsel allowed those concerns to distract him, he can only beg the court's forgiveness and request the Court not punish his clients for his errors.

C. The Motion Satisfies the Standard set forth in LRCivP 7.2(g)

Reconsideration is appropriate under LR CivP 7.2(g) because the Court did not have the benefit of Plaintiffs' reply which contains facts, evidence and case citations that were not in the original motion, either because they were not available or had not yet been

raised. Therefore, this motion complies with the requirement that Motion for Reconsideration demonstrate "…manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." (*See* LRCivP.7.2(g)) It "…points out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier". (*Id.*) It does not repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order" that would not have properly been made in the reply. (*Id.*)

CRONUS LAW, PLLC

## II.     Summary of Plaintiffs' Reply to Motion to Supplement

Had Counsel completed his task on time, Plaintiffs' Reply would have made the following points to rebut the Defendants Response and Joinder:

1. While there is no published opinion from the 9th circuit supporting Defendants argument that responses to motions to dismiss cannot be supplemented when warranted, there is substantial precedent for parties on both sides supplementing Motions to Dismiss with relevant evidence and that Court's, in the exercise of their sound discretion, regularly consider such supplements evidence and argument, as a Westlaw search for "Motions to supplement Motions to dismiss" demonstrates.[3]

2. The reason motions to supplement are routinely granted is because the Court's overarching duty is to reach a fair, equitable and legally supported decision, in

---

[3] 95% of the cases which appear in response to such a search are either slip or unpublished opinions which cannot be cited as binding precedent. However, Plaintiffs are not referring to the findings as precedent, but to demonstrate that Courts in the 9th Circuit, and indeed, around the country, routinely grant such motions, hear them and rule on them.

a way that promotes justice and judicial economy, especially when considering pre-discovery case-dispositive motions.

3. Courts are explicitly discouraged from using hyper-technical interpretations of the rules to shield Defendants from meritorious litigation, especially when the rules give the moving party the option of challenging the complaint by either a responsive pleading or a motion. Courts which have seriously analyzed this claim have concluded that the form of the challenge chosen by one party (Pleading v. Motion) should not be used as a weapon that limits the Court and opposing party's ability to create a full and complete record. As such, Courts from all jurisdictions have implicitly and explicit rejected the result Defendants seeks as arbitrary, inconstant with the letter or intent of the rules, the duty of the courts to rule on the merits and actual day to day practices. *Carter v. American Bus Lines, Inc*., 22 F.R.D. 323, 326 (D. Neb., 1958)

4. Defendant SWA's responses to the Subpoena Duces Tecum issued in related case of *Susan Martinez v. Terry Gene Graham, et al.,* (CV2017-093590) contains relevant information and admissions that was not available to the Plaintiffs at the time their Response to the Motion to Dismiss was filed, which demonstrate why the Motion to Supplement should be granted and, subsequently, the Motion to Dismiss must be denied;

5. That since the original Motion was filed, the Pilots have produced additional relevant evidence that was not available to the Plaintiffs which the Court should consider. Specifically, a A.R.Civ.P 26.1 Supplemental Disclosure Statement ("SDS") containing two internal SWA emails containing representations and admissions by Captain Graham that contradict central claims repeatedly made by Defendants. (See Exhibits "B" the Pilots' SDS and "C" the SWA emails) If the statements in the two documents are accurate, Defendants representation regarding their forensic experts "establishment" of the date and location where the alleged "Prank Video" was made are false.  As such, the motion to

supplement should itself be supplemented to include Exhibits B and C as well as the response to the SDT.

6. Defendants, as they have done throughout, continue to contest, deny and argue about the "facts" and the proper interpretation of the factual allegations when they are required to accept them as true. The proposed supplement demonstrates the Defendants mendacity in being willing to do or say anything to avoid having the actual evidence of their Pilots' intentional acts and crimes examined by Plaintiffs or their experts. It is only by constantly twisting the "facts" that the narrative that nothing beyond the normal, routine subjecting of SWA's female subordinates to their Pilots' criminal behavior, intentional invasion of their privacy and infliction of severe emotional and mental distress and physical injury occurred and the fiction that this is just perfectly normal workplace behavior, sanctioned and protected by Congress, the Arizona Legislature and the Federal and State Courts in Arizona Courts, can be maintained.

7. The Defendants story keeps changing. Defendants claimed they did a thorough investigation, such that SWA cannot be held liable. SWA now admits it did not and the Pilots admit that the timeline SWA is using is not the one that Graham initially gave. That failure is an important element of Plaintiffs state law claims and the changing stories are demonstrate the Defendants knowledge that their actions were actionable under both Federal and State law, and have been actively engaged in a conspiracy to deny any court or victims the opportunity to put their denials to the test, through the crucible of discovery.

Justice must necessarily be blind. However, Federal Courts are equally obligated see what is clearly before their eyes. SWA and its Pilots insist that this Court ignore the Plaintiffs' detailed and specific factual allegations facts. Their arguments misinterpret the rules, relevant statutes and Court precedent. They obligate the judiciary to leave common sense and judicial experience at the courthouse door. That SWA attempts to mislead the Court about what it said and did in sworn documents presented in a related case brought

by another Flight 1088 crew member naturally leads to the conclusion that the "show and tell" described in footnote 1 was neither accurate nor reliable. Plaintiffs' current counsel was not present at the "presentation." SWA has never allowed the video or device to be examined. Its expert could not have established the Captain Graham recorded himself at Oakland Airport four months prior to Flight No. 1088, because Graham told his supervisor he had done it "a few weeks" not months, prior to the flight. The total sum of the changing stories, misrepresentations and outright lies confirms the Pilots' and SWA's prior knowledge of a pattern of intentional acts, harassment and their joint efforts to conceal the truth.

### III.   MOTIONS TO AMEND RESPONSES TO CHALLENGES UNDER RULE 12 CAN AND ARE REGULARLY AMENDED VIA RULE 15

The majority of Courts that have considered the Defendants claim that Rules 7 and 15 prohibit a party to seek permission to supplement its response to a 12 (b) motion, or indeed, any oral or written motion, have rejected that interpretation as being to rigid, inaccurate and inconsistent with the intent of the rules and duties of the Court deciding the motions.  Indeed, as far back as 1958, Federal Courts have been rejecting Defendants attempts to use Rule 7 as a shield against Courts deciding motions on their merits. In *Carter, supra,* the Nebraska District Court did a deep analysis into the flaws in this line of reasoning stating:

> The third-party plaintiff argues the following syllogism: Rule 15(a) only gives the Court power to permit amendment of a pleading; a motion is not a pleading, as defined in Rule 7(a); therefore the Court is without power to permit the amendment. The Court has considerable difficulty with this mechanical reasoning. Federal Rule 15(a) provides for leave to amend 'pleadings' to be given freely when justice so requires. Rule 8(f) admonishes the Court: 'All pleadings shall be so construed as to do substantial justice.' The Court cannot believe that the word 'pleadings' used in instances such as this is restricted to those papers set forth in Rule 7(a).

*Carter, supra* at P. 326.  The Court noted that the hyper-technical interpretation being offered was based on a misreading of Volume 3 of *Moore's Federal Practice,* did not comport with actual practice and was not supported by many of the cases cited to the

CRONUS LAW, PLLC

Court. "The cases cited [by Defendant] show clearly that the courts do not read Rule 15 literally." *(Id.)*    Multiple Courts[4] have followed the reasoning in *Carter* and, like *Carter*, a careful reading of the cases cited by Defendants demonstrates that the interpretation Defendants offer is not actually supported by all or even most of the cases they cited. That is because Federal Courts routinely allow parties to file such motion and consider them if and when failure to do so violates the higher duty of ruling on the merits of a case, of serving justice and judicial economy.

LRCivP 7.2 implicitly explicitly recognizes the Court's discretion in modifying the rules for motions, including permitting motions to strike and for reconsideration that the Defendants' interpretation of the rules would not allow. LRCivP 7.2(g) acknowledges that a motion for reconsideration should be granted when it contains "new facts" not reasonably available when the motions were briefed. When a Court would be required to consider new facts in deciding a FRCP Rule 60 Motion for Reconsideration of a final order, it should, when given the opportunity, consider those new facts *before* it renders a final decision dismissing the case. That is the result which promotes judicial economy, justice and complies with the mandate that Courts allow meritorious cases to proceed to discovery.

**IV.    THE EVIDEENCE OFFERED BY PLAINITFFS IS NEW EVIDENCE THAT SUPPORTS PLAINTIFFS' FACTUAL ALLEGATIONS AND LEGAL CLAIMS THAT WAS NOT PREVIOUSLY AVAILABLE**

---

[4] *See Jones v. City of Buffalo*, 867 F. Supp. 1155, 1167 (W.D.N.Y.,1994):"Although removal petitions and motions for remand are not specifically identified, this Court does not "believe that the word 'pleadings' ... [should be] restricted to those papers set forth in Rule 7(a)." *Carter v. American Bus Lines, Inc.,* 22 F.R.D. 323, 326 (D.Neb.1958). Instead, the concept of "pleadings" should receive a "liberal interpretation" in appropriate circumstances." *See Also Mohajerin v. Pinal County,* 2007 WL 4358254, at P7 (D.Ariz.,2007 where Judge David Campbell, who actually sits on the Federal Rules Committee, permitted and ruled on Plaintiff's motion to supplement: "Plaintiff seeks to supplement his response to the motion to dismiss in order to address more fully Defendants' argument regarding the Fourteenth Amendment. Dkt. # 20. Because the Court has decided to deny the motion to dismiss on this issue, the Court will also deny Plaintiff's motion to supplement as moot.

The Defendants do not dispute that the statements and admissions by SWA in responding to the SDT were not available to Plaintiffs when they filed their response. Presumably they will not dispute that the emails and the SDS were not available either, since they were never provided. SWA does not do not dispute that it has never allowed anyone to independently examine the alleged fake video or the device it is on.  The SWA emails and Pilots SDS demonstrate that SWA's expert could not have verified that the fake video it used and has repeatedly touted as vindication, was actually shot in Oakland four months prior to Flight 1088.

**V.   THE EVIDENCE OFFERED BEARS DIERCTLY ON KEY ALLEGATIONS MADE IN THE COMPLAINT REGARDING THE DEFENDATS ACTIONS, INTENT AND STATE OF MIND, ALL OF WHICH ARE ELEMENTS TO THE CLAIMS BROUGHT BY PLAINITFFS**

SWA's failure to actually investigate the complaints of criminal activity by its Pilots is actionable under established Arizona and Federal law.  Specifically, that failure is recognized as creating the causes of action set forth in Counts 2, (Intentional Infliction of Emotional Distress), 3, (Invasion of Privacy),  4, (Willful Misconduct -Failure to Train, Supervise, Investigate and Discipline), 5 (Breach of Covenant and Fair Dealing) and 6 (Sex Harassment/Discrimination). SWA's response to the SDT alone provides strong evidence of willful misconduct pre and post incident. When combined with its own internal emails and the Pilots' SDS, stating the "fake video" if it existed at all pre-incident, was made  a  "few weeks" before Flight 1088,  not four months ago as Defendants repeatedly claimed. Assuming those representations to be true, as the court must, then the Fake Video SWA claims it had scientifically verified when it showed it to the Crew, was a lie. That intention misrepresentation of the facts is precisely the type on ongoing, intentional misconduct Arizona Courts have repeatedly stated in not protected by state law.

CRONUS LAW, PLLC

*Ford v. Revlon 153 Ariz 28, (1987); Coffin v. Safeway, Inc.* 235 F. Supp 997, 1003 (D. Ariz. 2004) *"*Arizona courts have set forth the elements for the tort of IIED relying on the language of the Restatement (Second) of Torts [citing *Ford; See also Claxton v. Waters, 34 Cal.4th 367, 379 (Cal.2004); Greenfield v. Am. W. Airlines, Inc., No. C03-05183 MHP, 2004 WL 2600135,* (N.D. Cal. Nov. 16, 2004).(The Workers' Compensation Act, as a matter of policy, does not estop a plaintiff from pursuing sexual harassment claims in civil actions.)

As discussed in Plaintiffs' motion to supplement, which Defendants ignore, the willful misrepresentations about the evidence combined with Defendants' failure to preserve the evidence not only precludes granting of the Motion to Dismiss, it would justify striking the Defendants' answer *Lips v. Scottsdale Healthcare Corp.*, 224 Ariz. 266, 267–68, 229 P.3d 1008, 1009–10 (2010). (*See Also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958, 960–61 (9th Cir.2006) (affirming dismissal against party for bad faith destruction of relevant evidence.); S*ee also* F. R. Civ. P. 37(d).

### VI. THE COURT IS ALREADY REQUIRED TO CONSIDER MATTERS OUTSIDE OF THE 4 CORNERS OF THE PLEADINGS BECAUSE THE DEFENDATS HAVE NOT ADHEARED TO RULE 12 STANDARDS IN THEIR MOTION, JOINDER OR REPLIES

A court deciding a complex Rule 12(b) motion to dismiss may consider evidence and documents outside of the 4 corners of the pleadings if doing so is necessary to achieve a legally supportable decision. Because the Defendants have repeatedly deviated from the standards and requirement for Rule 12(b) motion in their pleadings, the Court should consider evidence outside the 4 corners of the pleadings and apply the standard applicable to Rule 56 motions for summary judgment.

Paying lip service to the standards is not the same as complying with them. Defendants have steadfastly denied that there was any "intent" to harm or discriminate

-12-

against Plaintiffs and her spouse, despite that being exactly what Plaintiffs have alleged was done. They have denied that Plaintiffs' suffered any severe emotional, psychological or physical distress, despite Plaintiffs' specific factual allegations in the Plaintiffs' Third Amended Complaint ("TAC").   And Defendants have claimed they are not liable because they did in fact, conduct an investigation which demonstrated that the "fake video" story was true, instead of admitting that a crime was committed, ignored and then covered up, which is what the TAC actually alleges.

Indeed, there is no better example of Defendants failure to concede the factual allegations plead by Plaintiffs than Page 5, footnote 1 of SWA's response where SWA claims:

1.  That Plaintiffs know SWA possesses the Pilot's iPad device and the ESI stored on it, (despite its explicit denial in its response to Martinez's SDT that it does not, in fact, currently possess either);
2.  because, in January of 2018, Rene Steinaker, Susan Martinez and Larry Jackson and *all of their attorneys* personally attended a presentation by Peak Forensics' at SWA's attorney's offices;
3.   during which they were all shown the *prank video that Ms. Steinaker mistakenly believed to be a live stream recording of Captain Graham using the lavatory on Flight 1088;*
4.  and that *everyone* who attended that meeting *was also shown the information* from Captain Graham's iPad;
5.  which established Graham *had recorded that prank video at the Oakland International Airport 4 months before Flight No. 1088.*

None of the statement or claims are true. The TAC not only alleges that similar statements made in the past are not true, it cites those misrepresentations as elements of the various state and federal claims alleged in the complaint. The facts (actual and alleged) are: 1) SWA said what it said in response to the STD and never turned over the video, any device or other ESI gathered in its investigation; 2) None of Plaintiffs' current attorneys

CRONUS LAW, PLLC

-13-

attended that, or any other meeting in January, 2018; 3) SWA has never allowed anyone to examine the "fake video" it claimed it had verified was taken at Oakland Airport four months before Flight 1088; and 5) the video that was shown is not what Rene Steinaker saw in the cockpit of Flight 1088. Further, assuming the SWA emails are accurate, not only is the  the claim that Peak Forensics actually verified the date and location of the alleged video is not true, SWA knew it was not true before it even hired him and well before it decided to turn that false claim into the central pillar of its defense.

Footnote 1 contains at least five fundamental misstatements of fact are demonstrably false and which directly contest the factual allegations set forth in the TAC. Because Defendants have not actually accepted the Plaintiffs factual allegations as true, or the reasonable inferences flowing from the allegations, they are, in fact, contesting those allegations. In doing so, Defendants have converted the motion to dismiss to a Rule 56 motion summary judgement motion. Under Rule 56, the proper standard is whether there are any material issues of fact precluding a judgment in the moving parties' favor. There can be "no genuine issue as to any material fact," *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); "[E]ven if there is no factual dispute, where *possible* inferences to be drawn from the circumstances are conflicting, summary judgment is improper. *Orme School v. reeves,* 802 P.2d 1000 1005 (Ariz. 1990)  Under that standard, the motion must be denied. These new documents, presented in response to a valid subpoena in SWA's case, and under the obligations of Ariz. R. Civ. P 26.1 in the Pilots case, constitute additional, incontrovertible evidence that significant disputes regarding material issues of fact exist, thereby precluding dismissal of this case.

**VII.    EVIDENCE THAT THE DEFENDATS ARE TAKING INCONSISTANT POSITIONS IN RELATED CASES ON CONTESTED FACTUAL ALLEGATIONS MUST BE CONSDERED WHEN THE MOVING PARTIES ARE EFFECTIVELY DEMANDING THAT THE COURT ACCEPT THEIR VERSION AND INTERPETATAIONS OF CONTESTED FACTS**

No clever arguments, representations or tortured interpretations can change the fact that the documents submitted by Plaintiffs say what they say. The Documents submitted by Plaintiffs speak for themselves.  The Defendants have repeatedly changed their story and argued for tortured, nonsensical interpretations of the Rules in a concerted effort to prevent any court from reviewing the actual evidence. The Court should not be fooled by Defendants shifting claims about what they said or what they meant. Instead, the Court should read the documents, consider them carefully and not rely on *any* of the parties' interpretations or representations. Plaintiffs are more than content to allow the Court to determine if it was the Plaintiffs who have misrepresented what was written in those documents or who been dishonest about their significance, or if it is the Defendants who have done so.

Wherefore, Plaintiffs request the Court accept the Motion for Reconsideration and order further briefing, as required by LRCivP 7.2 (g)(2). Plaintiffs also request oral argument on this motion and respectfully suggest that it would be appropriate to argue both the Motion to Reconsider and the Motion to Supplement together, after which the Court should grant both motions. and allow Plaintiffs to supplement the record with the following documents:

1.  SWA's response to the SDT issued in Martinez

CRONUS LAW, PLLC

2.  The Pilots Second SDS and;

3.  The two SWA internal emails that were recently disclosed in the Second Supplemental Disclosure Statement.

RESPECTUFLLY submitted this 30th day of April, 2020.

CRONUS LAW, PLLC


By:  /s/Jeff Bouma
      Jeff Bouma
      Larry Cohen
      2601 E Thomas Rd., Ste. 235
      Phoenix, AZ 85016
       *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April, 2020, I electronically transmitted the foregoing with the Clerk of the Court using the CM/ECF system for filing, and copies were mailed to all counsel of record at the following addresses:

Ronald L.M Goldman
Diane Marger Moore
**BAUM HEDLUND ARISTEI GOLDMAN**
10940 Wilshire Blvd. 17th Floor
Los Angeles, California 90024
rgoldman@baumhedlundlaw.com
dmargermoore@baumhedlundlaw.com
*Attorneys for Plaintiffs*

R. Shawn Oller
Peter Prynkiewicz
**LITTLER MENDELSON, P.C.**
Camelback Esplanade
2425 E Camelback., Ste. 900
Phoenix, AZ 85016
soller@littler.com
pprynkiewicz@littler.com
*Attorneys for Defendants Southwest Airlines, Co.*

-16-

CRONUS LAW, PLLC

Dominique Barrett
Lori Metcalf
**QUINTAIROS, PRIETO, WOOD &**
**BOYER, P.A.**
2390 E Camelback Rd., Ste. 440
Phoenix, AZ 85016
dominique.barrett@qpwblaw.com
lori.metcalf@qpwblaw.com
*Attorneys for Defendants Terry Graham*
*and Ryan Russell*

By: /s/ Patti Hibbeler