**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renee Steinaker, et al., | No. CV-19-05022-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| Southwest Airlines Company, et al., | |
| Defendants. | |

Before the Court are Plaintiff's Motion for Summary Judgment Against Defendants Graham and Russell (Doc. 202), Plaintiff's Motion for Summary Judgment Against Defendant Southwest Airlines Co. (Doc. 205), Defendants Graham and Russell's Motion for Summary Judgment (Doc. 221), and Defendant Southwest's Motion for Summary Judgment (Doc. 223). The Motions have been fully briefed. (Docs. 226, 229, 230, 231, 232, 233, 235, 237, 238, 239).[1] The Court now rules as follows.[2]

**I.    BACKGROUND**

Plaintiff Renee Steinaker is a flight attendant employed by Defendant Southwest Airlines Company ("Southwest"). (Doc. 108 at 5). Defendants Terry Graham and Ryan

---

[1] The Court notes that Defendants Graham and Russell's Reply (Doc. 239) was untimely filed. Defendants never sought an extension of the deadline nor did they provide any explanation for their untimeliness. Accordingly, the Court will strike Defendants Graham and Russell's Reply (Doc. 239) as untimely.

[2] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Russell are pilots employed by Southwest. (Doc. 108 at 6). On February 27, 2017, Captain Graham and First Officer Russell flew Southwest Airlines Flight 1088 from Pittsburgh, Pennsylvania to Phoenix, Arizona with four flight attendants on board, including Plaintiff. (Doc. 109 at 7–8). While in the air, pursuant to airline protocol, Defendant Graham requested that a flight attendant report to the cockpit so he could use the forward lavatory. (Doc. 109 at 8). When Plaintiff entered the cockpit and Defendant Graham left to use the lavatory, Defendant Graham's iPad in the cockpit displayed a video showing Defendant Graham in the lavatory. (Doc. 109 at 12). Plaintiff asked Defendant Russell if the iPad was showing a live video stream of the lavatory, and he responded that it was a new, secret Southwest security measure. (Doc. 109 at 13). Plaintiff took a picture of the iPad on her cell phone, showed it to Defendant Russell, and told him that she would be reporting it to Southwest. (Doc. 109 at 15). When Defendant Graham returned to the cockpit, he did not answer her questions about whether there were cameras in the lavatory. (Doc. 109 at 17).

After Plaintiff left the cockpit, the flight attendants searched the lavatories for cameras but did not find any. (Doc. 109 at 22). As soon as Plaintiff disembarked in Phoenix, Plaintiff reported to two Southwest managers that the plane's lavatories were being livestreamed. (Doc. 109 at 24). Nonetheless, Southwest permitted Defendants Graham and Russell to proceed with their next scheduled flight to Nashville on the same aircraft about an hour after Flight 1088 landed, without taking any investigative measures. (Doc. 109 at 33–34). Southwest directed Plaintiff and the other Flight 1088 flight attendants not to talk to anybody about what happened on Flight 1088. (Doc. 109 at 36–37).

Plaintiff's Fifth Amended Complaint ("FAC") alleges that one of two scenarios occurred on Flight 1088: that Defendants Graham and Russell either installed a hidden camera in the forward lavatory of Flight 1088, or that Defendant Graham recorded a video of himself in a lavatory months before Flight 1088, which he then played on his iPad in the cockpit of Flight 1088 in collaboration with Defendant Russell, to make

Plaintiff believe that she and others had been watched and recorded in the lavatory. (Doc. 109 at 2). The Fifth Amended Complaint alleges five causes of action: (1) Title VII sex harassment/discrimination against Southwest, (2) Title VII retaliation against Defendant Southwest, (3) intentional or reckless infliction of emotional distress ("IIED") against Defendants Graham and Russell, (4) IIED against Southwest, and (5) invasion of privacy against all Defendants.[3]

## II.  LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy its burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322–23. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

## III.  DISCUSSION

### a. Title VII Sexual Harassment Against Defendant Southwest

Both Plaintiff and Southwest move for summary judgment on the first count. "A plaintiff asserting a Title VII claim under a hostile work environment theory must show (1) the existence of a hostile work environment to which the plaintiff was subjected, and (2) that the employer is liable for the harassment that caused the hostile environment to exist." *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006). To satisfy the first element, the plaintiff must show that "(1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) this conduct was sufficiently

---

[3] Plaintiff's husband, David Steinaker, also alleged retaliation against Southwest, but his claim was voluntarily dismissed. (Docs. 191, 196).

3

severe or pervasive to alter the conditions of employment and create an abusive working environment." *Id.* (internal quotation marks and alteration omitted). "The working environment must both subjectively and objectively be perceived as abusive, and the objective analysis is done from the perspective of a reasonable woman." *Fuller v. Idaho Dep't of Corrs.*, 865 F.3d 1154, 1161 (9th Cir. 2017) (internal quotation marks omitted). Under the second element, "[a]n employer is vicariously liable for a hostile work environment created by a supervisor." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 689 (9th Cir. 2017). But if the perpetrator of a hostile work environment is not a supervisor, an employer is liable only "if the employer knew, or should have known, about the harassment and failed to take prompt and effective remedial action." *Id.* (internal quotation marks omitted).

As a threshold matter, the parties disagree as to what evidence should be considered as part of the hostile work environment claim. Southwest argues that only conduct related to Flight 1088 may be considered because that is the only instance of alleged discrimination for which a timely administrative charge was filed. *See Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1107 (9th Cir. 1998) ("[A] claim of discrimination under [Title VII] will not be sustained if it is based on an event or events that occurred more than 300 days before the filing of a charge."). Plaintiff nonetheless contends that the sexual harassment she experienced as a Southwest employee prior to Flight 1088 may be considered as "background evidence" in support of her claim, citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). There, the Supreme Court stated that employees are not barred "from using . . . prior acts as background evidence in support of a timely claim." *Id.* at 113. Following *Morgan* and related Ninth Circuit precedent, this Court concludes that Plaintiff "may not sustain a cause of action for relief" based on discrimination suffered prior to Flight 1088, but such evidence may be used to assess Southwest's liability for events related to Flight 1088. *Lyons v. England*, 307 F.3d 1092, 1111–12 (9th Cir. 2002).

Having determined that there is only one actionable instance of harassment, the

Court finds that the conduct was not so severe or pervasive as to alter Plaintiff's terms or conditions of employment. "A single incident of harassment can support a claim of hostile work environment because the frequency of the discriminatory conduct is only one factor in the analysis, but for a single incident to suffice, it must be extremely severe." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021) (internal citations and quotation marks omitted). The Ninth Circuit has repeatedly held that a single instance of sexual assault in the form of groping is not sufficiently severe. *See Brooks v. City of San Mateo*, 229 F.3d 917, 922 (9th Cir. 2000) (coworker touching plaintiff's stomach, forcing his hand under her sweater, and fondling her bare breast not sufficiently severe); *Robello v. Mandalay Corp.*, 740 F. App'x 607, 608 (9th Cir. 2018) (coworker grabbing plaintiff's breasts not sufficiently severe); *Milano v. Carter*, 599 F. App'x 767, 767 (9th Cir. 2015) (coworker looking down plaintiff's shirt, touching near her breast, and pulling up her shirt to take an unwanted picture of her pregnant stomach not sufficiently severe). Rather, the Court agrees with Southwest's assessment that the Ninth Circuit has identified only even more egregious forms of hands-on sexual abuse, such as rape, as examples of one-time conduct that could be sufficiently severe to create a hostile work environment, although it has not foreclosed the possibility that other conduct could suffice. (Doc. 237 at 7); *see Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002) (holding that "[b]eing raped by a business associate, while on the job, irrevocably alters the conditions of the victim's work environment"); *Brooks*, 229 F.3d at 927 n.9 ("[A] sexual assault by a supervisor, even on a single occasion, may well be sufficiently severe so as to . . . give rise to a hostile work environment claim.").

Here, Plaintiff does not allege that Defendants Graham or Russell ever touched her, nor is there any evidence that they ever viewed her in a state of undress or even that they ever placed a camera in the lavatory of Flight 1088. *See infra* Section III.d. Instead, the evidence in the record, viewed in the light most favorable to Plaintiff, shows that Plaintiff believed that her coworkers, Defendants Graham and Russell, viewed her in a

state of undress through a hidden camera in the lavatory.[4] If physical conduct such as fondling a coworker's bare breast and exposing a coworker's stomach to take a photograph do not meet the requisite level of severity for a Title VII claim, then Defendants' conduct in this case cannot either. The Court is placed in the unenviable position of comparing the severity of one type of intrusive conduct to another and does not disregard the intrusiveness evoked by a belief that oneself has unknowingly been filmed in the restroom. But it is no more extreme than the other types of conduct that have been rejected by the Ninth Circuit and is certainly less extreme than rape or other violent sexual abuse. As a matter of law, the conduct at issue in this case was not so severe or pervasive as to alter the conditions of Plaintiff's employment. *See also Kohler v. City of Wapakoneta*, 381 F. Supp. 2d 692, 709 (N.D. Ohio 2005) (finding that a police dispatcher's discovery of a tape-recorder placed in the women's bathroom by the chief of police, together with other events, did not amount to severe or pervasive harassment). Southwest is thus entitled to summary judgment on the Title VII harassment claim.

### b.  Title VII Retaliation Against Defendant Southwest

"To make out a prima facie case of retaliation, an employee must show that (1) [s]he engaged in a protected activity; (2) [her] employer subjected [her] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Plaintiff's Response to Southwest's Motion for Summary Judgment does not address Southwest's arguments that she has failed to make a sufficient showing to establish the first or third elements. (*See* Doc. 235). Plaintiff has thus conceded that she cannot meet her burden of

---

[4] Plaintiff asserts that Defendants Graham and Russell were her supervisors because pilots have authority over flight attendants during a flight. (Doc. 232 at 3). But only a specific type of authority makes one a supervisor under Title VII: a person is a supervisor "only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013) (internal quotation marks omitted). Plaintiff has not provided any evidence that Defendants Graham and Russell had authority to take such actions against her, so they are treated as Plaintiff's coworkers under Title VII.

proof on the retaliation claim.[5] *See M.S. v. County of Ventura*, No. CV 16-03084-BRO (RAOx), 2017 WL 10434015, at *24 n.20 (C.D. Cal. Mar. 7, 2017) ("Failure to respond to the merits of one party's argument constitutes a concession of that argument."); *see also Mendoza v. City of Peoria*, No. CV-13-00258-PHX-DJH, 2015 WL 13239816, at *4 (D. Ariz. July 31, 2015) (construing the plaintiff's "silence" on an argument as a concession). Southwest is entitled to summary judgment on this claim.

### c. Intentional Infliction of Emotional Distress

Defendant Southwest argues that Plaintiff's state-law tort claims must be dismissed because they are barred by Arizona workers' compensation laws.[6] Defendants Graham and Russell join in Southwest's argument.[7] (Doc. 238). Generally, in Arizona, workers' compensation "is the exclusive remedy against [an] employer or any co-employee" for work-related injuries suffered by an employee. A.R.S. § 23-1022(A); *see also McKee v. State*, 388 P.3d 14, 18 (Ariz. Ct. App. 2016). "An employee can elect to maintain an action at law for damages in lieu of receiving workers' compensation only where an employer's wilful misconduct caused the employee's injury . . . ." *McKee*, 388 P.3d at 18 (citing A.R.S. § 23-1022(A)). The statute defines "wilful misconduct" as "an act done knowingly and purposely with the direct object of injuring another." A.R.S. § 23-1022(B). To maintain a wilful misconduct action, an employee must establish four

---

[5] Regardless, Southwest's argument as to the third element, in particular, is well-taken. Plaintiff has not provided evidence that those who took the retaliatory actions alleged in the FAC knew of her report and complaint regarding Flight 1088. *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."); *see also Tavares v. ASARCO LLC*, No. CV-20-01596-PHX-SPL, 2022 WL 1811166, at *6 (D. Ariz. June 2, 2022).

[6] Despite Defendants' arguments that the IIED and invasion of privacy claims are both barred by workers' compensation exclusivity, the Court addresses them separately because the claims are based on distinct sets of facts.

[7] Although Defendant Graham and Russell's Joinder was untimely filed, because workers' compensation exclusivity is a jurisdictional issue, the Court will consider whether it has subject matter jurisdiction over the tort claims against all Defendants. *See Bonner v. Minico, Inc.*, 766 P.2d 598, 601 (Ariz. 1988); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012).

elements:

> (1) the employer's wilful misconduct must have been the cause of the employee's injury,
>
> (2) the wilful misconduct must have been an act done knowingly and purposely with the direct object of injuring another,
>
> (3) the act that caused the injury must have been the personal act of the employer, and
>
> (4) the act must have reflected a wilful disregard of the life, limb or bodily safety of employees.

*McKee*, 388 P.3d at 19 (quoting *Gamez v. Brush Wellman, Inc.*, 34 P.3d 375, 378 (Ariz. Ct. App. 2001)).

The Court considered workers' compensation exclusivity extensively at the motion-to-dismiss stage. Initially, the Court dismissed Plaintiff's IIED and invasion of privacy claims, as well as a claim for failure to train, supervise, investigate and discipline, as barred by the exclusivity provision. (Doc. 76 at 10). The Court found that Plaintiff had failed to adequately plead that Defendants had acted with an intent to inflict injury, meaning the wilful misconduct exception did not apply. (Doc. 76 at 9).

Plaintiff filed a Motion for Reconsideration, asking the Court to reconsider its dismissal of the IIED and invasion of privacy claims. (Doc. 81). The Court declined to do so as Plaintiff's Motion reasserted the same legal and factual arguments previously rejected. (Doc. 93 at 2).

Six months later, however, the Court *sua sponte* reconsidered its Order denying Plaintiff's Motion for Reconsideration and revived Plaintiff's IIED and invasion of privacy claims. (Doc. 107 at 1). The Court relied on *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047 (9th Cir. 2007)—where the Ninth Circuit affirmed the grant of summary judgment on a negligent investigation, hiring, supervision, and retention claim as barred by Arizona workers' compensation exclusivity but considered the IIED and invasion of privacy claims on their merits—to hold that Plaintiff's IIED and invasion of privacy claims were not barred by workers' compensation exclusivity. (Doc. 107 at 3–7). It is

important to note, however, that at that time, the Court was considering whether the factual allegations in the Third Amended Complaint met the pleading standard. (Doc. 107 at 1). The Court did not hold that *all* IIED and invasion of privacy claims fall within the wilful misconduct exception, but rather that Plaintiff's claims had met the applicable standard at that stage.

Notably, the IIED claims in the Third Amended Complaint alleged that Defendants' "intentional acts . . . were committed with the intent to cause [Plaintiff] to suffer emotional distress or in reckless disregard of the likelihood that their actions would proximately cause Plaintiff to suffer extreme emotional distress." (Doc. 28 at 18, 21). Now, though, Plaintiff argues primarily that Defendants' conduct was reckless with respect to its effect on her. (*See, e.g.*, Doc. 202 at 7, 11; Doc. 205 at 16; Doc. 231 at 4). To the extent Plaintiff argues that Defendants' conduct was intentional, she makes that argument with respect to the physical acts themselves—*not* that those actions were taken with an intent to inflict injury. (*See, e.g.*, Doc. 231 at 4; Doc. 232 at 4; Doc. 235 at 12–13). That is insufficient to establish that Defendants acted "knowingly and purposely with the direct object of injuring" Plaintiff, as is required to establish that the wilful misconduct exception applies. A.R.S. § 23-1022(B).

Plaintiff's only argument that she has met this element is to ask, if "these acts were not intended to harm [Plaintiff] . . . what were they for, then?" But that question is completely beside the point; at this stage, it is *Plaintiff's* burden to present evidence sufficient to establish that Defendants acted with an intent to inflict injury. She has not met that burden. The workers' compensation statute is "most restrictive" as to this element. *Gamez*, 34 P.3d at 379 (internal quotation marks omitted). For example, in *Gamez*, the Arizona Court of Appeals held that even if the employee had presented evidence that the employer "acted knowingly or maliciously or that it disregarded the dangers its employees face" while working with a hazardous substance, that the employer "intentionally failed to warn its employees of . . . a substantial certainty that they will develop" a disease as a result, and that the employer "sacrificed employee safety for

higher profits," it would not suffice to establish an intent to injure. *Id.* The court cited favorably to another case holding that "'regardless of whether the employer acted in a calculated fashion to maximize its profits in utter disregard of the certainty of injury to its employees,' a claim by an employee is statutorily barred unless the employee can establish that the employer intended to injure him or her." *Id.* at 380 (quoting *Davis v. U.S. Emps. Council, Inc.*, 934 P.2d 1142, 1149 (Or. Ct. App. 1997)). Instead, the court stated, an employee must present evidence of "a genuine intentional injury, comparable to an intentional left jab to the chin." *Id.* (internal quotation marks omitted).

Here, with respect to Southwest's actions surrounding Flight 1088, at most, Plaintiff has presented evidence that its investigation showed a reckless disregard for the safety of its passengers and employees, including Plaintiff, and that the company's actions were calculated to protect its reputation. But there is no evidence that Southwest intended to harm Plaintiff. Likewise, with respect to the actions of Defendants Graham and Russell, all of the evidence leads to a conclusion that they acted with an intent at humor, not that they intended to injure Plaintiff. Even if their utterly misguided sense of humor showed a reckless disregard for Plaintiff, that is insufficient to invoke the wilful misconduct exception. From the evidence presented, no reasonable juror could conclude that Defendants' actions were performed "knowingly and purposely with the direct object of injuring another." A.R.S. § 23-1022(B). As such, the Court lacks subject matter jurisdiction over the IIED claims, and Counts 3 and 4 must be dismissed.

### d. Invasion of Privacy

Finally, Defendants move for summary judgment against Plaintiff on Count Five, invasion of privacy. While the FAC does not specify which type of invasion of privacy tort it alleges, only the tort of inclusion upon seclusion plausibly applies to the facts. *See Godbehere v. Phx. Newspapers, Inc.*, 783 P.3d 781, 784 (Ariz. 1989). "A claim for intrusion upon seclusion requires the Plaintiff to prove two elements: (i) an intentional intrusion, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns and (ii) that the intrusion would be highly offensive to a reasonable

person." *Davis v. HDR Inc.*, --- F. Supp. 3d ---, 2022 WL 2063231, at *9 (D. Ariz. June 8, 2022) (citing *Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 853 (Ariz. Ct. App. 1997)). Plaintiff concedes that she cannot prove that Defendant Russell invaded her privacy, so summary judgment will be granted in his favor. (Doc. 233 at 8).

Plaintiff also concedes that she cannot prove that there was a camera in the lavatory on Flight 1088 such that Defendants Graham or Southwest intruded upon her private affairs. Instead, Plaintiff argues that Defendants spoiled potential evidence of this claim because Southwest did not search the plane and did not confiscate Defendant Graham's iPad for seven months after Flight 1088. (Doc. 233 at 7; Doc. 235 at 11–12). But "[t]he case law on spoilation is clear that the burden for showing spoilation occurred requires more than a mere suggestion or implication." *Galicia v. Nat'l R.R. Passenger Corp.*, No. CV 17-8020-JFW (JCx), 2018 WL 6314191, at *4 (C.D. Cal. July 20, 2018) (rejecting spoilation sanctions where plaintiff presented no evidence that cameras had captured the incident at issue); *see also Kinnally v. Rogers Corp.*, No. CV-06-2704-PHX-JAT, 2008 WL 4850116 (D. Ariz. Nov. 7, 2008) ("In cases where courts have found spoilation, there was a clear showing of destruction of evidence."). Here, there is no evidence in the record to support Plaintiff's suggestion that there was actually a camera in the lavatory on Flight 1088; to the contrary, the evidence supports Plaintiff's allegations in the alternative that Defendant Graham prerecorded the video of himself in the lavatory that Plaintiff saw during Flight 1088 on an entirely different plane four months earlier. The flight attendants, including Plaintiff, did not find any cameras when they searched Flight 1088. Moreover, the lavatory video that was eventually found on Defendant Graham's iPad appears to match the photo that Plaintiff took of the iPad during Flight 1088. (Doc. 224 at 6–7; Doc. 236 at 7). Plaintiff has not met her burden to show spoilation, and as a result, there is no evidence that Defendants invaded her privacy.

**IV.   CONCLUSION**

In sum, Plaintiff has failed to present evidence sufficient to establish any of her claims at trial. Defendants should not, however, take this result as a condonation of their

actions. Defendants Graham and Russell's poor excuse for humor was juvenile, crude, and unprofessional. There is nothing funny about leading a colleague whom they had never met before to believe that she—and everyone else on the plane—was being watched in the lavatory, which is without question a private space. The pilots showed a complete disregard for the perspectives of anyone but themselves and, by failing to reveal to Plaintiff that their so-called "prank" was not real, demonstrated a callousness to the potential effects of their actions. Southwest's response was equally, if not more, callous. By instructing the Flight 1088 flight attendants to keep the incident to themselves, by allowing Defendants Graham and Russell to proceed to fly the same aircraft to their next destination without inspection *despite* having no indication at that time that the lavatory video was prerecorded, by conducting a shockingly bare investigation,[8] and by imposing minimal discipline on Defendants Graham and Russell,[9] Southwest prioritized its reputation and its pilots over the safety of its crew members and passengers. Meanwhile, other Southwest employees have publicly, and likely privately, denigrated Plaintiff for reporting what she reasonably believed to be the recording of passengers and employees in the lavatory. (Doc. 204 at 7; Doc. 227 at 6; *see* Doc. 204-1 at 102–12). The Court does not doubt that Plaintiff has suffered from the events of Flight 1088 and her pursuit of accountability for Defendants' actions and inaction. But under the law and the record in

---

[8] To be specific, Southwest's Employee Relations department did not conduct an investigation and expressed concerns about the incident making it outside the company. (Doc. 225 at 10–11). The Corporate Security department did not investigate, despite receiving a call from Plaintiff about Flight 1088, because it was told by a supervisor in Plaintiff's department that she had called Corporate Security in error. (Doc. 225 at 14; Doc. 206-1 at 215). Instead, the investigation was left to a Chief Pilot, Mark Montgomery, in the Flight Operations department, which manages Southwest's pilots. (Doc. 225 at 14). Mr. Montgomery had no formal training in investigations, relied primarily on what Defendant Graham told him, did not ask Defendant Graham for his iPad or a copy of the lavatory video, did not interview the Flight 1088 flight attendants, and believed that the flight attendants were taking advantage of the company. (Doc. 225 at 14–18). Mr. Montgomery could not recall if he took notes during the investigation, but his standard practice is to shred his notes once an incident is resolved. (Doc. 206-1 at 223–24).

[9] Defendant Graham received a Letter of Reprimand while Defendant Russell received a Memo of Record, which is the lowest level of discipline. (Doc. 206-1 at 238).

this case, such as they are, Defendants cannot be held liable.

**IT IS THEREFORE ORDERED** that the Clerk of Court shall **strike** Defendants Graham and Russell's Reply in Support of Their Motion for Summary Judgment (Doc. 239) as untimely.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment Against Defendants Graham and Russell (Doc. 202) and Plaintiff's Motion for Summary Judgment Against Defendant Southwest Airlines Co. (Doc. 205) are **denied**.

**IT IS FURTHER ORDERED** that Defendants Graham and Russell's Motion for Summary Judgment (Doc. 221) and Defendant Southwest's Motion for Summary Judgment (Doc. 223) are **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Defendants and **terminate** this action.

Dated this 28th day of July, 2022.

Honorable Steven P. Logan
United States District Judge